OPINION *Page 2 
{¶ 1} Defendant-appellant Charles Borer appeals the judgment of the Court of Common Pleas of Seneca County, Domestic Relations Division. For the reasons that follow, we reverse the trial court's judgment.
 {¶ 2} Charles married Kelly Borer on November 19, 1983, and the parties' have three children: Jacob, Riley, and Olivia. Kelly filed a complaint for divorce. Thereafter, the magistrate held hearings on March 10 and 11, 2005, and March 22, 2005. On April 22, 2005, an agreement was reached by the parties which provided in part: Kelly's income from her house cleaning business was less than minimum wage; and that the parties agreed a 50% deviation of child support due to the parties' shared parenting agreement and the children spending equal time with both parents. The agreement specifically provided, "No agreement has been reached as to spousal support payments and income that should be attributed to Kelly Borer for child support calculation purposes."
 {¶ 3} On July 18, 2005, the magistrate filed its decision in which it determined: a 50% deviation in the child support obligation would be appropriate based on the equal time each parent spends with the children; that Kelly was not earning minimum wage income and imputed minimum wage to Kelly; and ordered Charles to pay Kelly $300.00/month for a period of eight years as spousal support. *Page 3 
 {¶ 4} Thereafter, Charles filed several objections to the magistrate's decision. The trial court found that the magistrate erred in changing the shared parenting agreement, and in its orders regarding unpaid medical, optical, dental, and counseling expenses. However, the trial court upheld the magistrate's decision regarding: the fifty percent deviation in child support, the finding that Kelly spent more time with the children then Charles, imputing minimum wage income to Kelly, and ordering spousal support. The trial court granted in part and denied in part the objections and ordered that the magistrate's decision be corrected in accordance with its determinations of the objections and be made an order of the court. The trial court subsequently filed a judgment entry and divorce decree.
 {¶ 5} It is from this judgment that Charles appeals and sets forth three assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I The trial court erred in upholding the Magistrate's decision as to granting only a fifty percent deviation in child support.
 {¶ 6} In his first assignment of error, Charles argues that the trial court erred in finding only a fifty percent deviation in the child support was appropriate. Charles further argues that he only agreed to the fifty percent deviation "based on the Magistrate finding that the Appellee would have been imputed to have been able to earn more income than as found by the Magistrate." *Page 4 
 {¶ 7} The amount of child support calculated pursuant to the child support order is rebuttably presumed to be the correct amount of child support. R.C. 3119.03; Hurte v. Hurte, 164 Ohio App.3d 446,2005-Ohio-5967, 842 N.E.2d 1058, at ¶ 25, citations omitted. In order to deviate from the child support schedule when there is a shared parenting, the trial court must comply with R.C. 3119.24 which states,
 (A)(1) A court that issues a shared parenting order in accordance with section 3109.04 of the Revised Code shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet * * * through the line establishing actual annual obligation, except that, if that amount would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in section 3119.23 of the Revised Code, the court may deviate from the amount.
 (A)(2) The court shall consider extraordinary circumstances and other factors or criteria if it deviates from the amount described in division (A)(1) of this section and shall enter in the journal the amount described in division (A)(1) of this section its determination that the amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting its determination.
The amount of time each parent spends with the children is considered an extraordinary circumstance under the statute. R.C. 3119.24(B).
 {¶ 8} An appellate court reviews child support issues under an abuse of discretion standard. Fox v. Fox, 3d Dist. No. 5-03-42,2004-Ohio-3344, at ¶ 11, *Page 5 
citations omitted. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Id., citingBlakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 9} In the present case, the magistrate found that the parties agreed to a fifty percent deviation based on shared parenting and the children spending equal time with both parents. The magistrate further found that the imposition of the child support amount calculated pursuant to the child support schedule would be unjust, inappropriate, and not in the best interest of the minor children as required by R.C.3119.24. The trial court subsequently overruled Charles' objections to the fifty percent deviation finding that the defendant agreed to the fifty percent deviation of child support in open court.
 {¶ 10} The court made the required findings under R.C. 3119.24 on the record in order to deviate from the child support schedule. However, we note that there is nothing in the record to show that, when the court determined the amount of child support, the court considered the child support Kelly should pay when the children are with Charles. On remand, the trial court must recalculate the amount of child support or make findings as to why such recalculation is not appropriate.
 {¶ 11} Charles first assignment of error is therefore sustained. *Page 6 
 ASSIGNMENT OF ERROR NO. II The trial court erred in upholding the Magistrate's decision in imputing income to the Appellee and finding the Appellee was voluntary underemployed.
 {¶ 12} In his second assignment of error, Charles argues that Kelly should have been found to be underemployed and should have been imputed at a higher rate of income. Charles argues that he presented evidence that Kelly could have been reemployed at a higher amount, that Kelly was terminated for not following company policy and consuming alcohol on the job, and that Kelly refused work. Charles further argues that the amount of income from Kelly's business was not supported by the evidence.
 {¶ 13} R.C. 3119.01(C) provides,
(5)"Income" means either of the following:
 For a parent who is employed to full capacity, the gross income of the parent;
 For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent.
Emphasis added.
 {¶ 14} The criteria for determining the imputed income for a parent that the trial court determines is voluntarily unemployed or underemployed includes,
 (i) The parent's prior employment experience;
 (ii) The parent's education;
 (iii) The parent's physical and mental disabilities, if any; *Page 7 
 (iv) The availability of employment in the geographic area in which the parent resides;
 (v) The prevailing wage and salary levels in the geographic area in which the parent resides;
 (vi) The parent's special skills and training;
 (vii) Whether there is evidence that the parent has the ability to earn the imputed income;
 (viii) The age and special needs of the child for whom child support is being calculated under this section;
 (ix) The parent's increased earning capacity because of experience;
 (x) Any other relevant factor.
R.C. 3119.01(C)(11)(a).
 {¶ 15} An appellate court reviews the trial court's determination of the amount of income to be imputed under an abuse of discretion standard. Rock v. Cabral (1993), 67 Ohio St.3d 108, 616 N.E.2d 218, syllabus. As previously noted, an abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable.Blakemore, 5 Ohio St.3d at 219, 450 N.E.2d 1140.
 {¶ 16} The magistrate determined that Kelly was employed at Carmella's Restaurant for three months at $11/hour, and that she worked approximately 30 to 40 hours per week. In addition, that magistrate determined that Kelly was fired from her employment at Carmella's for violating a newly enacted company policy and that there was no evidence that Kelly did not show up to work or otherwise intended to be fired. According to the magistrate, Kelly testified that she was unable to obtain comparable employment that would allow her to provide for her *Page 8 
children's activities and needs at the same pay rate. The magistrate determined that Kelly did not voluntarily quit the job at Carmella's, that the three months of income while at Carmella's was not indicative of the income Kelly earned during the parties' marriage, and that the income from Carmella's should not be the basis for determining Kelly's income.
 {¶ 17} The magistrate found that Kelly had started a cleaning business, Kelly's projected income based on her current clients was $10,421.00 for the year, and Kelly was not earning even minimum wage. The magistrate concluded that Kelly should be imputed minimum wages of $10,712 since there was no testimony that Kelly refused work opportunities or that she was "slacking".
 {¶ 18} The trial court found that Charles presented no evidence as to what income could have been imputed to a person who operated a cleaning business or what the prevailing wage and salary levels would be in the geographic area in which the parties resided. The trial court determined that the magistrate correctly imputed minimum wage income to Kelly and overruled Charles' objection.
 {¶ l9} The trial court clearly considered the evidence of Kelly's wages while working at Carmella's but determined that those wages should not be used for imputing income. The record reveals that Kelly worked at Carmella's for only three months and Kelly testified that she was not able to find employment making a similar wage. After reviewing the record, we find that the trial court did not *Page 9 
abuse its discretion in determining that the amount of income Kelly earned while working at Carmella's should not be the amount of income imputed to Kelly.
 {¶ 20} Furthermore, the record indicates that Kelly's employment with Carmella's was terminated due to a violation of company policy. Adam Smith, one of the owners and a general manager of the restaurant, testified that Kelly had been written up and terminated from Carmella's for violating a company policy that required signing off on the nightly deposit. Smith also testified regarding whether Kelly had been disciplined and stated, "* * * looks like there was a discipline on smoking on duty. Uhm, and, then, uh states here `concerns drinking on shift, making sure work is complete first' * * *. Although Charles argues that Kelly was terminated from Carmella's for not following company policy and consuming alcohol on the job, Smith clearly testified that Kelly was terminated for violating a company policy.
 {¶ 21} Moreover, Charles argues that he presented evidence that Kelly refused work but Charles has failed to cite to any evidence to support his argument. In reviewing the record, we have also found no evidence in the record to support Charles' argument that Kelly refused work.
 {¶ 22} On April 22, 2005, Charles signed a consent agreement in which Charles agreed that Kelly's income from the house cleaning business was less than minimum wage. Kelly also testified that her income was $10,400. Thus, we find *Page 10 
that the trial court did not abuse its discretion in finding that Kelly's income was less than minimum wage.
 {¶ 23} After reviewing the entire record, we hold that the trial court did not abuse its discretion in imputing minimum wage income to Kelly. Charles second assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. Ill The trial court erred in upholding the Magistrate's decision in ordering spousal support.
 {¶ 24} In his third assignment of error, Charles argues that the amount of spousal support was inappropriate based on the evidence, including the fact that Kelly's income from her business was not supported by the evidence. Charles objects to the amount of income imputed to Kelly, and argues that Kelly refused work. Charles argues that the amount of income imputed to Kelly directly affects the amount of spousal support and child support that Charles has been ordered to pay.
 {¶ 25} When determining whether spousal support is appropriate, the trial court must consider the factors listed in R.C. 3105.18(C)(1). R.C.3105.18; Lee v. Lee, 3d Dist. No. 17-01-05, 2001-Ohio-2245, at *2. One of the factors to be considered is "[t]he relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties." R.C. 3105.18(C)(1)(i); Cole v.Cole, 5th Dist. No. 2004CA00057, 2004-Ohio-5194, at ¶ 11. *Page 11 
 {¶ 26} Since we are remanding on the first assignment of error regarding child support, an analysis regarding the trial court's order of spousal support is premature based on R.C. 3105.18(C)(1)(i).Cole, 2004-Ohio-5194, at ¶ 12. "Thus, because of the potential impact the trial court's review of child support could have on spousal support, the trial court should consider both issues upon remand." Id.
 {¶ 27} Thus, Charles third assignment of error is premature.
 {¶ 28} Having found error prejudicial to appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment reversed.
 SHAW and WILLAMOWSKI, JJ., concur. *Page 1