OPINION
{¶ 1} Although originally placed on our accelerated calendar, we have elected, pursuant to Local Rule 12(5), to issue a full opinion in lieu of a judgment entry.
 {¶ 2} Defendant-Appellant, Bruce Edward Patton, appeals the judgment of the Allen County Court of Common Pleas, Juvenile Division, ordering him to pay retroactive child support in the amount of $88,612.68 to Plaintiff-Appellee, Sandra Michelle Hills. On appeal, Patton asserts that the trial court's award of child support was against the manifest weight of the evidence, contrary to law, and an abuse of discretion because Hills' claim was barred by the doctrine of laches and because the trial court improperly calculated the amount and failed to apply the appropriate deviations. Based on the following, we affirm in part, reverse in part, and remand this matter for further consideration.
 {¶ 3} In November 2005, the Allen County Child Support Enforcement Agency ("CSEA") filed a complaint on behalf of Hills to establish paternity and support, alleging that Patton was the natural father of Jessica Renee Hills (DOB: 6/13/1988) and seeking both future and back child support. Patton did not file an answer to the complaint.
 {¶ 4} In December 2005, the trial court issued an agreed judgment entry that, based upon genetic testing, Patton was the natural and biological father of *Page 3 
Jessica and established a parent-child relationship. Among other things, the entry also designated Hills as the residential parent and legal custodian, ordered Patton to pay monthly child support in the amount of $374.12 to commence November 1, 2005, and provided that Hills would claim the tax dependency exemption for tax purposes. The sole unresolved issue was whether Patton should pay back child support.
 {¶ 5} In May 2006, the magistrate held a hearing on the issue of back child support. The same day, Patton moved to dismiss Hill's claim for back child support on the grounds it was barred by R.C. 3111.13 and the doctrine of laches.
 {¶ 6} At the hearing, the following was established.
 {¶ 7} Hills and Patton began dating sometime in late summer or early fall 1987. Both lived in or near Findlay, Ohio. Patton was also dating other people at the time, but Hills was not. The relationship ended in October 1987. About a week or two later, Hills learned she was pregnant. According to Hills, the day she found out about the pregnancy she went to Patton's office and informed him, they were in frequent contact with each other until Patton married in spring 1988, and Patton asked her about doctor visits and even paid for her vitamins for a while. Patton disputed this, testifying that Hills told him over the phone that she was pregnant; that he questioned whether he was the father; and, that he did not recall buying her vitamins. *Page 4 
 {¶ 8} Patton married his wife, Stacy, in March 1988. Stacy was aware of the paternity allegations. On March 21, 1988, Hills' attorney sent Patton a letter alleging his paternity and requesting to negotiate the care of the child. On March 30, 1988, Patton's attorney responded, denying Patton's paternity and indicating that he would oppose any legal proceedings, but would submit to a paternity test when the child had reached six months of age. Hills gave birth to Jessica in June 1988, but did not list Patton on the birth certificate because his signature was required. According to Hills, Patton's mother visited her and Jessica in the hospital, but Patton stated he was not aware of the visit. Patton did not hear from Hills again until she filed a paternity suit in Hancock County in July 1990. After the dismissal of the paternity suit, Hills did not refile it because she was dealing with a lot of emotional issues related to the situation and believed the burden was on Patton because he knew about the pregnancy.
 {¶ 9} Patton testified that he was aware he had a right to a paternity test and could initiate a paternity action; that he knew the dismissal did not resolve the issue, but he did not want to know the child and thought the burden was on Hills to prove it; that he would have taken a blood test at any time to establish paternity; and, that, after the dismissal in 1990, he assumed he was not the father because no further action was taken against him. *Page 5 
 {¶ 10} In 1992, Hills moved to Lima. At that time, Patton and his wife also lived in Lima with their three children. When Jessica was fourteen or fifteen years old, Hills contacted Patton because Jessica wanted to meet him. Patton became involved in Jessica's life, referred to himself as her father, and did not ask for a paternity test or dispute that he was Jessica's father because she looked like him. During that time, Hills knew she was entitled to child support but did not act because she thought Patton was going to begin contributing. Patton bought Jessica gifts on holidays, a class ring, some clothes, and also bought her a car shortly after her sixteenth birthday because he had gotten his other daughter a car. The car was in Patton's name, he insured the car under his family policy, and he made the car and insurance payments.
 {¶ 11} Approximately one year later, when Jessica was seventeen, Patton asked Jessica to start paying him $150 per month toward her car insurance because his family policy premium had increased and because his other daughter was paying toward her own insurance. Hills refused because she did not want Jessica to have to get a job to pay Patton because she felt he owed Jessica. Hills also indicated that she did not have the money to contribute toward Jessica's car insurance because she lived from paycheck to paycheck. In August 2005, Patton took the car away from Jessica. Hills testified that this action was the breaking *Page 6 
point for her because she had also asked Patton to help with Jessica in other ways, which he had refused, so she decided to file the instant action.
 {¶ 12} Regarding the parties' finances, Patton's joint tax returns from 2002 through 2005, his social security statement of earnings from 1977 through 2003, and Hills' social security statement of earnings from 1976 through 2004 were admitted without objection. Additionally, Hills testified that she has been steadily employed since 1988; that Patton made no contributions toward Jessica from the time of her birth up to the time Jessica requested to meet him; and, that Patton did not contribute to any of Jessica's necessities aside from some clothes and the car. Patton testified that he spent about $300 on Christmas gifts for Jessica, $200 on her class ring, $257 per month for her car payment, and $174 per month for her car insurance before he took the car away. Patton also stated that his son suffers from cerebral palsy, which requires $200 per month in medical bills. Patton admitted that the Bureau for Children with Medical Handicaps helped with the medical bills, but ceased after one year because his income level disqualified him.
 {¶ 13} At the close of the hearing, the magistrate took the matter under advisement and requested that the parties file proposed findings of fact and conclusions of law, as well as the appropriate child support worksheets.
 {¶ 14} In June 2006, the parties submitted their proposed findings of fact, conclusions of law, and child support worksheets. *Page 7 
 {¶ 15} In September 2006, the magistrate denied Patton's motion to dismiss Hills' claim for back child support, granted Hills' motion for back child support, and ordered Patton to pay Hills a lump sum of $88,612.68 in back child support for the time period of June 13, 1988 through October 31, 2005. In doing so, the magistrate found that R.C.3111.13 did not bar Hills' claim for back child support because Patton had knowledge of his alleged paternity prior to Jessica's birth. The magistrate did not address the doctrine of laches issue. In calculating the amount of back child support owed, the magistrate adopted and incorporated the child support worksheets submitted by Hills. Thereafter, Patton filed objections to the magistrate's decision.
 {¶ 16} In February 2007, Patton filed a supplemental brief in support of his objections to the magistrate's decision.
 {¶ 17} In March 2007, Hills filed her response to Patton's objections.
 {¶ l8} In September 2007, the trial court overruled Patton's objections, adopted the magistrate's decision in its entirety, denied Patton's motion to dismiss Hills' claim for back child support, and ordered Patton to pay Hills $88,612.68 in back child support.
 {¶ 19} It is from this judgment that Patton appeals, presenting the following assignments of error for our review. *Page 8 
 Assignment of Error No. I THE TRIAL COURT'S ORDER AWARDING PLAINTIFF/APPELLEE A LUMP SUM JUDGMENT IN THE AMOUNT OF $88,612.68 FOR CHILD SUPPORT RETROACTIVE TO THE CHILD'S DATE OF BIRTH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, WAS CONTRARY TO LAW AND CONSTITUTES AN ABUSE OF DISCRETION WHERE PLAINTIFF RESTED ON HER RIGHTS AND DID NOT SEEK THE ESTABLISHMENT OF PATERNITY AND SUPPORT UNTIL THE CHILD WAS SEVENTEEN YEARS AND FIVE MONTHS OLD AND WHERE DEFENDANT/APPELLANT HAS BEEN PREJUDICED BY SAID DELAY.
 Assignment of Error No. II THE TRIAL COURT'S ORDER AWARDING PLAINTIFF/APPELLEE A LUMP SUM JUDGMENT IN THE AMOUNT OF $88,612.68 FOR CHILD SUPPORT RETROACTIVE TO THE CHILD'S DATE OF BIRTH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, WAS CONTRARY TO LAW AND CONSTITUTES AN ABUSE OF DISCRETION WHERE THE TRIAL COURT DID (Sic) PROPERLY CALCULATE THE AMOUNT OF CHILD SUPPORT DUE AND DID NOT APPLY THE DEVIATION FACTORS SET FORTH IN OHIO REV. CODE § 3119.23 TO SAID CALCULATIONS.
 {¶ 20} The following standards of review apply throughout.
 Standards of Review {¶ 21} It is well-established that a trial court's decision regarding child support obligations will not be disturbed on appeal absent an abuse of discretion. Dreher v. Stevens, 3d Dist. No. 4-05-20,2006-Ohio-351, citing Booth v. Booth *Page 9 
(1989), 44 Ohio St.3d 142, 144; see, also, Mahlerwein v.Mahlerwein, 160 Ohio App.3d 564, 571, 2005-Ohio-1835; Pendleton v.Pendleton, 3d Dist. No. 5-06-38, 2007-Ohio-3834, at ¶ 21 (trial court has considerable discretion in calculating child support). Likewise, a trial court's adoption of a magistrate's decision is reviewed under an abuse of discretion standard. Marchel v. Marchel, 160 Ohio App.3d 240,243, 2005-Ohio-1499. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. In applying the abuse of discretion standard, we must not substitute our judgment for that of the trial court. In re Jane Doe I (1991), 57 Ohio St.3d 135, 138.
 {¶ 22} Additionally, civil judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C E. Morris Co. v. Foley Const. Co. (1978),54 Ohio St.2d 279, 280. "[W]hen reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct." State v.Wilson, 113 Ohio St.3d 382, 387, 2007-Ohio-2202, citing Seasons CoalCo., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80-81. Mere disagreement over the credibility of witnesses or evidence is not sufficient reason to reverse a judgment. Id. *Page 10 
 Assignment of Error No. I {¶ 23} In his first assignment of error, Patton asserts that the trial court's award of back child support was against the manifest weight of the evidence and constituted an abuse of discretion because Hills rested on her rights, which prejudiced him. Specifically, Patton contends that R.C. 3113.13(F)(3) applied to bar Hills' claim for back child support because Jessica was over three years of age at the time of the initial filing of the claim and because he had no knowledge or reason to have knowledge of his alleged paternity. Alternatively, Patton contends that Hills' claim was barred by the doctrine of laches. We disagree.
 {¶ 24} We note at the outset that Civ.R. 8(C)[1] requires that "a party shall set forth affirmatively * * * laches, * * * statute of limitations, * * * and any other matter constituting an avoidance or affirmative defense" in pleading to a preceding pleading. Otherwise, affirmative defenses "other [than] those listed at Civ.R. 12(B)'" are waived. Lehman v. Hubbard, 9th Dist. No. 23279, 2006-Ohio-6906, at ¶ 5, quoting Jim's Steak House, Inc. v. Cleveland, 81 Ohio St.3d 18, 20,1998-Ohio-440. R.C. 3111.13(F)(3)(a) operates as a statute of limitations for actions seeking back child support and, therefore, is an affirmative defense. Kreitzer v. Anderson, 157 Ohio App.3d 434,2004-Ohio-3024, at ¶ 9; Lehman, 2006-Ohio-6906, at ¶ 12. *Page 11 
Likewise, laches is clearly an affirmative defense. Pfeifer v.Shannon, 11th Dist. No. 2203-P-0117, 2004-Ohio-7241, at ¶ 46, citing Civ.R. 8(C) and Jim's Steak House, Inc., supra.
 {¶ 25} Here, Patton failed to file an answer to Hills' November 2005 paternity complaint and, consequently, failed to raise the affirmative defenses of statute of limitations and laches. Patton did not assert these defenses until his May 2006 motion to dismiss Hills' request for back child support, which he filed the same day the trial court conducted the hearing on the matter. "An affirmative defense is not the proper subject of a motion to dismiss, but must be pleaded and proven by the party asserting the defense." Post v. Caycedo, 9th Dist. No. 23769,2008-Ohio-111, at ¶ 7, citing State ex rel. Freeman v. Morris (1991),62 Ohio St.3d 107, 109. Additionally, neither the statute of limitations defense nor the laches defense is recognized under the exception to the pleading requirement in Civ.R. 12(B). Thus, we find that Patton waived the affirmative defenses of statute of limitations and laches by failing to plead them in compliance with Civ.R. 8(C). Moreover, Patton waived any perceived error in the trial court's application of R.C.3111.13(F)(3). See, e.g., Kreitzer, 157 Ohio App.3d at ¶ 9, citingCarmen v. Link (1997), 119 Ohio App.3d 244, 250, and Mills v. WhitehouseTrucking Co. (1974), 40 Ohio St.2d 55, syllabus. *Page 12 
 {¶ 26} Nevertheless, since the trial court addressed the statute of limitations, we note that the trial court properly determined that R.C.3111.13(F)(3) did not bar an award for back child support. Under R.C.3111.13(F)(3)(a),[2] a court is prohibited from ordering a parent to pay an award of back child support if both of the following apply:
 At the time of the initial filing of an action to determine the existence of the parent and child relationship with respect to that parent, the child was over three years of age.
 Prior to the initial filing of an action to determine the existence of the parent and child relationship with respect to that parent, the alleged father had no knowledge and had no reason to have knowledge of his alleged paternity of the child.
R.C. 3111.13(F)(3)(a)(i)-(ii). Additionally, "the mother of the child may establish that the alleged father had or should have had knowledge of the paternity of the child by showing, by a preponderance of the evidence, that she performed a reasonable and documented effort to contact and notify the alleged father of his paternity of the child." R.C. 3111.13(F)(3)(b).
 {¶ 27} Here, the second prong under R.C. 3111.13(F)(3)(a) is dispositive. Neither party disputes that Hills informed Patton about the pregnancy on the date she learned of it; that Hills' attorney sent Patton a letter in March 1988, before Jessica was born, requesting to negotiate for the care of the child; that, shortly *Page 13 
thereafter, Patton's attorney sent a letter rejecting the offer; and, that Hills filed a paternity action in Hancock County in 1990 alleging Patton's paternity, of which Patton received service. Copies of the March 1988 attorney letters and the 1990 paternity action were submitted at the hearing without objection. Patton also admitted that he was aware he could initiate a paternity suit; that the dismissal of the 1990 action did not resolve the issue; but, that he did not want to know the child and thought Hills should have the burden of pursuing the matter. Additionally, the magistrate found that Patton bought vitamins for Hills during the pregnancy and that his mother visited Hills in the hospital after she gave birth to Jessica. Although Patton disputed these findings, the conflicting testimony presented a credibility determination best left to the trier of fact.
 {¶ 28} Further, contrary to Patton's assertions, R.C.3111.13(F)(3)(a)(ii) only requires knowledge or reason to have knowledge of the alleged paternity. Consequently, the trial court had before it competent, credible evidence that Patton was aware of his alleged paternity of Jessica. Thus, we find that the trial court's finding that R.C. 3111.13(F)(3)(a) did not bar an award for back child support was neither against the manifest weight of the evidence nor an abuse of discretion.
 {¶ 29} Accordingly, we overrule Patton's first assignment of error. *Page 14 
 Assignment of Error No. II {¶ 30} In his second assignment of error, Patton asserts that the trial court's award of back child support was against the manifest weight of the evidence and constituted an abuse of discretion because the trial court improperly calculated the amount of back child support due and failed to apply the requisite deviation factors. Specifically, Patton contends that the child support worksheets adopted and incorporated by the trial court list Hills' income as zero or a nominal amount for certain years without explanation; that the calculations were based on the current child support schedule rather than the schedules that were in effect, if any, for a given year; and, that the trial court did not consider any of the deviation factors, including Patton's obligations for his handicapped child, the tax dependency exemption denied him during the years in question, and his in-kind contributions to Jessica from 2003 through 2005.
 {¶ 31} Child support must be calculated in accordance with the provisions of R.C. 3119.02 to 3119.24, including the basic child support schedule and the applicable worksheet. R.C. 3119.02. The provisions regarding calculation of child support "`are mandatory in nature, and must be followed literally and technically in all material respects.'"Kreitzer, 157 Ohio App.3d at ¶ 17, quoting Marker v. Grimm (1992),65 Ohio St.3d 139, 143. *Page 15 
 {¶ 32} The worksheet for sole residential parent status is contained in R.C. 3119.022, and the amount calculated pursuant to the basic child support schedule and applicable worksheet through the line establishing the actual annual obligation is rebuttably presumed to be correct. R.C.3119.03. In calculating back child support, the court or agency is required to calculate the amount "using the basic child support schedule, worksheets, and child support laws in effect, and the incomes of the parents as they existed, for that prior period of time." R.C.3119.05(J); see, also, Kreitzer, 157 Ohio App.3d at ¶ 17. Moreover, the parents' current and past income and personal earnings used in the calculations must be verified by electronic means or with suitable documents. R.C. 3119.05(A).
 {¶ 33} Additionally, the court may deviate from the guideline child support amount if, upon consideration of the factors in R.C. 3119.23, it determines that the guideline amount would be unjust or inappropriate and would not be in the best interest of the child. R.C. 3119.22. If a court decides to deviate from the guideline child support, it must make findings supporting that determination. However, a court is not mandated to deviate and a parent "is not automatically entitled to a downward deviation merely because a factor is present." Lopez v. Coleson, 3d Dist. No. 12-05-24, 2006-Ohio-5389, at ¶ 9, citing Pauly v. Pauly,80 Ohio St.3d 386, 1997-Ohio-105. *Page 16 
 {¶ 34} Here, Patton first argues that the child support worksheets for 1988 through 2005 list Hills' income as zero or a nominal amount for certain years without explanation and that the calculations were based on the current child support schedule rather than the schedules that were in effect at the time. Upon reviewing the child support worksheets adopted by the magistrate, it appears that the current basic support schedule and child support worksheet were used to calculate the amount owed for each year back to 1988. As the court is required to use the schedules and worksheets in effect at the time when awarding back support, we find that the trial court erred in failing to do so.
 {¶ 35} Furthermore, the annual gross income for Hills listed on each worksheet does not match up with her social security statement of earnings submitted for calculation purposes. For instance, the worksheet provides that Hills' annual gross income for 1991, 1994, and 1995 was zero, but her statement of earnings reflects that she had some taxable earnings. Additionally, no documentation or W-2 of Hills' 2005 annual gross income exists in the record even though an amount is listed for the corresponding child support worksheet.[3] In fact, even the amounts listed in Hills' statement of earnings do not match up with her annual gross income amounts listed on the child support worksheets, and *Page 17 
no explanation was provided for any of the discrepancies. Because none of Hills' annual gross income amounts listed on the child support worksheets adopted by the magistrate are verified or explained in the record, we find that the trial court erred in calculating back child support and remand to the trial court to recalculate the amount of back child support owed. In doing so, the trial court shall consider Patton's contributions to Jessica from 2003 through 2005, the tax dependency exemption for past years, and the fact that Patton has a handicapped child. See R.C. 3111.13(F)(2).
 {¶ 36} Accordingly, we sustain Patton's second assignment of error.
 {¶ 37} Having found no error to the appellant herein, in the particulars assigned and argued in his first assignment of error, but having found error to the appellant herein, in the particulars assigned and argued in his second assignment of error, we affirm in part, reverse in part, and remand the cause to the trial court for further proceedings consistent with this opinion.
Judgment Affirmed in Part, Reversed in Part, and Cause Remanded.
 SHAW, P.J. and PRESTON, J., concur.
[1] Juv.R. 1(C) provides that the Ohio Rules of Juvenile Procedure do not apply "[i]n proceedings to determine parent-child relationships * * *."
[2] We recognize that this provision was held unconstitutional as applied in Smith v. Smith, 109 Ohio St.3d 285, 2006-Ohio-2419. However, we are not presented with the factual scenario in Smith and, therefore, its holding has no bearing on this case.
[3] We also note that none of the child support worksheets adopted by the magistrate provided the year for which it was calculated. To save time and confusion, in the future the court or agency should do so. *Page 1