[Cite as *Bonvillian v. Clark*, 2014-Ohio-2003.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY

NICOLE L. BONVILLIAN,

    PLAINTIFF-APPELLEE,          CASE NO. 10-13-20

    v.

TRACY A. CLARK,            O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Mercer Common Pleas Court
Juvenile Division
Trial Court No. 42010045

**Judgment Affirmed**

Date of Decision: May 12, 2014

APPEARANCES:

    *William E. Huber* for Appellant

    *Thomas Luth* for Appellee

Case No. 10-13-20

**PRESTON, J.**

{¶1} Defendant-appellant, Tracy A. Clark ("Clark"), appeals the October 10, 2013 judgment entry of the Mercer County Court of Common Pleas, Juvenile Division, ordering that Clark pay child support to plaintiff-appellee, Nicole L. Bonvillian ("Bonvillian"). For the reasons that follow, we affirm.

{¶2} Clark and Bonvillian are the parents of a child, K.C. (*See* Doc. No. 1). The Mercer County Child Support Enforcement Agency ordered that Clark pay either $459.93 or $485.44 per month in child support and processing charges, depending on the provision of private health insurance. (Doc. Nos. 1, 2).

{¶3} On December 11, 2012, Clark filed two motions: a motion for custody, requesting that the trial court name him K.C.'s residential parent and legal custodian because doing so was in K.C.'s best interest; and, a motion for temporary allocation of parental rights and responsibilities. (Doc. Nos. 4, 5, 6, 7). Bonvillian filed a response on December 28, 2012, arguing that K.C. should remain in her care and custody. (Doc. No. 12).

{¶4} Clark moved the trial court to appoint a guardian ad litem ("GAL") for K.C. (Doc. No. 14). The trial court granted that motion on January 25, 2013 and appointed a GAL for K.C. (Doc. No. 16). The GAL filed reports on April 24 and May 16, 2013. (Doc. Nos. 20, 22).

{¶5} Before the final hearing scheduled for July 26, 2013, the parties agreed to a shared parenting plan. (July 26, 2013 Tr. at 5-7). Following the parties' agreement to the shared parenting plan, only the issue of child support remained unresolved. (*Id.* at 7). (*See also* Doc. No. 29).

{¶6} On July 30, 2013, Bonvillian filed her memorandum concerning child support, arguing that the existing child-support order should remain in effect. (Doc. No. 24). On August 2, 2013, Clark filed his memorandum concerning child support, arguing that because his parenting time was increased under the shared parenting plan, the trial court should grant him a deviation from the guideline amount of child support and reduce his child-support obligation. (Doc. No. 25). Clark offered several proposed child-support amounts based on different calculation methods employed by Ohio courts. (*See id.*).

{¶7} On October 2, 2013, the trial court filed a judgment entry approving and adopting as its order the parties' shared parenting agreement. (Doc. No. 29). Although the parties had already done so, the trial court also ordered that the parties file memoranda concerning child support. (*Id.*).

{¶8} On October 10, 2013, the trial court filed a judgment entry ordering that Clark pay either $420.89 or $395.52 per month in child support and processing charges, depending on whether Clark was or was not providing private health insurance coverage for K.C., respectively. (Doc. No. 31). The trial court

ordered that Clark pay an additional $103.45 per month in cash medical support if private health insurance coverage was no longer provided for K.C. (*Id.*). The trial court attached to its judgment entry a child support computation summary worksheet. (*Id.*).

{¶9} On October 29, 2013, Clark filed a notice of appeal of the trial court's October 10, 2013 judgment entry. (Doc. No. 34). He raises one assignment of error for our review.

### Assignment of Error

**The trial court abused it's [sic] discretion in failing to apply Ohio Revised Code §3119.24 and was arbitrary in denying the Defendant-Appellant a deviation as set forth under that statute.**

{¶10} In his assignment of error, Clark states that he "believes he is entitled to at least a consideration of the deviation as set forth in [R.C. 3119.24] concerning granting a deviation with a shared parenting plan." (Appellant's Brief at 8). He argues that while the trial court was not required to grant a deviation, the trial court abused its discretion by not considering extraordinary circumstances and the statutory factors, and by not explaining why it did not grant him a deviation.

{¶11} "An appellate court reviews child support issues under an abuse of discretion standard." *Borer v. Borer*, 3d Dist. Seneca No. 13-06-38, 2007-Ohio-3341, ¶ 8, citing *Fox v. Fox*, 3d Dist. Hancock No. 5-03-42, 2004-

Ohio-3344, ¶ 11. *See also Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997). "An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable." *Borer* at ¶ 8, citing *Fox* at ¶ 11 and *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶12} R.C. 3119.24, which governs an award of child support when a trial court issues a shared parenting order, provides, in part:

(A)

(1)     A court that issues a shared parenting order in accordance with section 3109.04 of the Revised Code shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet set forth in section 3119.022 of the Revised Code, through the line establishing the actual annual obligation, except that, if that amount would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in section 3119.23 of the Revised Code, the court may deviate from that amount.

(2)     The court shall consider extraordinary circumstances and other factors or criteria if it deviates from the amount described in

division (A)(1) of this section and shall enter in the journal the amount described in division (A)(1) of this section its determination that the amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting its determination.

R.C. 3119.24(A). *See also Borer v. Borer*, 3d Dist. Seneca No. 13-09-24, 2009-Ohio-6522, ¶ 22. The next division of the statute—R.C. 3119.24(B)—defines "extraordinary circumstances of the parents." *See Kovach v. Lewis*, 5th Dist. Ashland No. 11-COA-018, 2012-Ohio-1512, ¶ 40.

{¶13} The amount of child support calculated under R.C. 3119.24 and in accordance with the worksheet set forth in R.C. 3119.022 is rebuttably presumed to be the correct amount of child support. *Borer*, 2007-Ohio-3341, at ¶ 7, citing R.C. 3119.03 and *Hurte v. Hurte*, 164 Ohio App.3d 446, 2005-Ohio-5967, ¶ 25 (4th Dist.). Deviating from the amount of child support calculated using the R.C. 3119.022 worksheet is not mandatory. *Borer*, 2009-Ohio-6522, at ¶ 24, citing *Womack v. Womack*, 3d Dist. Hancock No. 5-2000-24, 2001 WL 122022, *2 (Feb. 12, 2001). A parent is not automatically entitled to a downward deviation merely because a R.C. 3119.23 factor is present, nor does a shared parenting plan automatically entitle a party to a set-off or credit for time spent with the children under the plan. *Green v. Tarkington*, 3d Dist. Mercer No. 10-10-02, 2010-Ohio-

2165, ¶ 19, citing *Womack* at *2, *Lopez v. Coleson*, 3d Dist. Putnam No. 12-05-24, 2006-Ohio-5389, ¶ 9, and *Pauly* at 388-390; *Borer*, 2009-Ohio-6522, at ¶ 24, citing *Hills v. Patton*, 3d Dist. Allen No. 1-07-71, 2008-Ohio-1343, ¶ 33, *Lopez* at ¶ 9, *Ayers v. Haas*, 3d Dist. Van Wert No. 15-07-13, 2008-Ohio-2405, ¶ 21, and *Pauly* at 388-390.

{¶14} Here, the trial court acted within its discretion when it decided not to deviate from the guideline amount of child support calculated using the R.C. 3119.022 worksheet. Clark incorrectly argues that the trial court was required by R.C. 3119.24 to consider extraordinary circumstances and the factors set forth in R.C. 3119.23. Rather, the trial court was required to "consider extraordinary circumstances and other factors or criteria *if* it deviate[d] from the amount described in [R.C. 3119.24(A)(1)] * * *." (Emphasis added.) R.C. 3119.24(A)(2). *See also Hackett v. Hackett*, 5th Dist. Delaware No. 13CAF010002, 2013-Ohio-4684, ¶ 17-18 ("The language in R.C. 3119.24(A)(2), which grants a trial court authority to deviate from the calculated child support order is discretionary. If, and only if, a trial court chooses to deviate from the worksheet is the trial court required to consider the factors."). Because the trial court did not order a deviation in this case, it did not abuse its discretion by not considering extraordinary circumstances or the R.C. 3119.23 factors.

{¶15} In support of his argument that a trial court "should consider the extra ordinary [sic] circumstances that come about because of a shared parenting plan," Clark cites *Drzal v. Drzal*, 7th Dist. Columbiana No. 05 CO 31, 2006-Ohio-5230. However, in that case, the parties agreed to a deviation, and the trial court's "sole issue was to what extent it would deviate from the standard support obligations." *Id.* at ¶ 21. As we stated above, a shared parenting plan does not automatically entitle a party to a deviation. *Green* at ¶ 19.

{¶16} We likewise reject Clark's argument that the trial court abused its discretion by not explaining why it did not grant Clark the deviation he requested. If a trial court does not grant a deviation, R.C. 3119.24 requires only that the trial court "order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet set forth in [R.C. 3119.022], through the line establishing the actual annual obligation * * *." R.C. 3119.24(A)(1). R.C. 3119.24 does not require that a trial court explain its reasons for not ordering a deviation. *See* R.C. 3119.24. *See also Warner v. Warner*, 3d Dist. Union No. 14-03-10, 2003-Ohio-5132, ¶ 17 (interpreting the similarly worded R.C. 3119.22, governing child-support deviations, and stating that "'[u]nless the trial court deviates from [the guideline] amount, the statute does not require the court to justify its decision'"), quoting *Coleman v. Campbell*, 11th Dist. Geauga No. 2001-G-2401, 2002-Ohio-3841, ¶ 16.

{¶17} Moreover, even if extraordinary circumstances and R.C. 3119.23 factors are present, the trial court is not required to grant a deviation. *See* R.C. 3119.24(A)(1) (stating that "the court *may* deviate from" the guideline amount of child support "if that amount would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in [R.C. 3119.23]" (emphasis added)); *Lopez*, 2006-Ohio-5389, at ¶ 9.

{¶18} For these reasons, we overrule Clark's assignment of error.

{¶19} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS, J., concurs.**

**/jlr**

**WILLAMOWSKI, P.J., Concurring Separately**.

{¶20} I agree with the position taken by the majority that the trial court did not abuse its discretion in denying the request for deviation as to the child support. I am writing separately because I believe there is a better way of handling the question of child support for shared parenting. The money should follow the

child. For example, if the child spends 75% of the time with the mother, then she should receive 75% of the allocated support with the father receiving the remainder. For further example, suppose the child support worksheet were to show an obligation of $1,000 dollars per month, with $700 coming from the father and $300 coming from the mother. This assumes for this example that father has 70% and mother has 30% of the combined parental income. The mother would be entitled to receive $750 of the $1,000 per month (75%) allotment for support, and father would be entitled to the remaining $250 per month (25%). Since both parents combined were expected to contribute an aggregate of $1,000 for the support per month, the net result in the example would be that the father would be obliged to pay the mother $450 per month for support of the parties' minor child. This would mean in this example that the mother would have $750 per month of the total support and the father would have $250 per month of the total support. This would reflect the percentage of time each parent had the child respectively. The amount of time with each parent is easily determined by the trial court based upon the visitation order. This method would reach a more equitable result since the support follows the child for whom it is paid. This method would also prevent one parent from getting the majority of the support due to inequity of income while the other is bearing the actual burden of support for the time the child is with him or her. The end result would be that the daily per diem would be in the same

home in which the child was residing. Nonetheless, the method used by the trial court is not incorrect and complies with the statute, which is why I concur with the judgment.