OPINION
{¶ 1} Appellant, Thomas Bentley ("Thomas"), appeals the February 19, 2004 judgment entry of the Common Pleas Court of Marion County finding Thomas in contempt of court for failing to maintain health insurance for the children, finding Thomas to be underemployed, imputing income to Thomas of $50,000.00 a year and denying Thomas' motions to decrease child support and to find Iris in contempt.
 {¶ 2} Thomas and Iris Gail Bentley, nka Iris Wilson ("Iris"), were married on May 28, 1993. The parties had two children together: Tait and Trey, both having a date of birth of September 15, 1990. Iris filed for divorce on January 18, 1994. A divorce was granted on April 16, 1996. Pursuant to the divorce decree, Iris was designated the residential parent for the children and was ordered to provide health insurance for the children. Thomas was granted visitation with the children and ordered to pay child support in the amount of $226.00 per child per month.
 {¶ 3} The parties filed numerous post-decree motions. This Court reviewed a finding by the trial court of contempt on the part of Thomas for failing to pay child support arrearages inBentley v. Bentley (Jan. 14, 1998), Marion App. No. 9-97-61, unreported, 1998 WL 12681. The parties continued to make various post-decree motions following this Court's review of the finding of contempt. The filings and orders relevant to the issues of this appeal are as follows. Iris filed a motion for contempt and modification of prior orders on April 11, 2001. Specifically, Iris alleged that Thomas failed to pay child support as ordered and asked the court to modify Thomas' visitation and recalculate child support. On August 14, 2001, the trial court granted Iris' motion for contempt and, upon finding that Thomas was voluntarily unemployed, ordered Thomas to seek work. The matter was set for hearing on January 3, 2002. In the January 8, 2002 judgment entry, the trial court stated that the parties had agreed that Thomas would carry health insurance for the children and would provide Iris with any cards or documents necessary to utilize the insurance for the children. Further, the trial court ordered that Thomas make consistent and regular child support payments and pay Iris' attorney fees in the amount of $375.00.
 {¶ 4} On February 12, 2003, Iris moved the court for an order finding Thomas in contempt of the court's order to pay her attorney fees and in contempt for failure to pay certain medical expenses of the children. Iris filed an amended motion on February 24, 2003, stating that there had been a change in circumstances and that child support should be increased. Thomas filed his own motion on April 24, 2003 asking that child support be decreased pursuant to a change in his circumstances. Thomas then filed a motion for contempt against Iris on June 30, 2003 alleging that Iris failed to honor the court's prior order to return a pitching machine to Thomas. Iris filed an amended motion for contempt on November 5, 2003 alleging Thomas failed to maintain health insurance for the children and failed to seek work.
 {¶ 5} A hearing on these matters was held on January 30, 2004 and the trial court made its findings and orders in the February 19, 2004 judgment entry. The trial court found Thomas in contempt for failing to provide health insurance for the children for the year 2003 and ordered Thomas to pay $4,985.76 to reimburse Iris for providing health insurance for the children during that year. The court also ordered that Thomas pay Iris' attorney fees of $500.00 for prosecution of the motion. The court found that Iris failed to return the pitching machine to Thomas at the time prescribed in the court's prior order, but found that the machine had no value. The court found that this issue was therefore moot and denied Thomas' motion for contempt. Finally, the court addressed the parties' motions for modification of child support. The court imputed income of $10,712.00 to Iris. The court found that Thomas was underemployed, making little effort to seek employment, and imputed wages to him in the amount of $50,000.00. Using these figures, the court ordered Thomas to pay child support in the amount of $379.99, per child, per month. It is from this judgment that Thomas now appeals asserting the following seven assignments of error.
The trial court erred to the prejudice of defendant-appellantby modifying child support without evidence sufficient toestablish change in circumstances.
 The trial court erred to the prejudice of defendant-appellantby finding he was voluntarily underemployed.
 The trial court erred to the prejudice of defendant-appellantby allowing Kenney Dice to testify.
 The trial court erred to the prejudice of defendant-appellantby finding he had potential income in the amount of $50,000.
 The trial court erred to the prejudice of defendant-appellantby ordering him to reimburse plaintiff-appellee $4,985.76 forinsurance.
 The trial court erred to the prejudice of defendant-appellantby awarding attorney fees to plaintiff-appellee.
 The trial court erred to the prejudice of defendant-appellantby denying defendant-appellant's motion for contempt.
 Child Support
 {¶ 6} In the interest of clarity and logic, Thomas' first, second, third and fourth assignments of error will be discussed together since they concern the issue of child support. In these assignments of error, Thomas argues that the trial court erred in finding that there was a change of circumstances which justified increasing his child support payments. With regard to the trial court's decision to increase the child support payments, Thomas argues that the trial court erred in allowing the testimony of Kenny Dice, which Iris offered in support of her contention that Thomas was voluntarily underemployed. Thomas argues that these errors contributed to the ultimate conclusion of the court to impute $50,000.00 income to him.
 {¶ 7} We begin by noting that trial courts are given broad discretion in determining whether to modify prior orders of child support. Shank v. Shank (1997), 122 Ohio App.3d 189, 192,701 N.E.2d 349, citing Woloch v. Foster (1994), 98 Ohio App.3d 806,810, 649 N.E.2d 918. Therefore, the trial court's decision will be reversed on appeal only for an abuse of discretion. Woloch,98 Ohio App.3d at 810. An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 8} Modification of a child support order involves a two-step process. Woloch, 98 Ohio App.3d at 810. First, the trial court must decide whether the movant has demonstrated a substantial change of circumstances. Id. Second, if a substantial change of circumstances is established, the court should make an appropriate modification. Id. R.C. 3119.79(A) governs modification of child support orders. This section provides that if upon recalculation of the amount of child support, the new child support amount deviates from the existing order by at least ten percent, the deviation will be considered a change in circumstances warranting a modification of the child support amount. R.C. 3119.79(A). The deviation demonstrated may result from an increase or a decrease in the obligor's income. Woloch,98 Ohio App.3d at 811.
 {¶ 9} Income for child support purposes is not necessarily equivalent to the parent's taxable income. Quinn v. Paras, 8th Dist. No. 82529, 2003-Ohio-4952, citing Foster v. Foster,150 Ohio App.3d 298, 2002-Ohio-6390, 780 N.E.2d 1041. R.C.3119.01(C)(5) defines "income" for purposes of calculating child support as either of the following:
(a) For a parent who is employed to full capacity, the grossincome of the parent;
 (b) For a parent who is unemployed or underemployed, the sumof the gross income of the parent and any potential income of theparent.
The court may consider the obligor's voluntary unemployment or underemployment as a substantial change of circumstances that would support modification. Woloch, 98 Ohio App.3d at 811.
 {¶ 10} The question of whether a parent is voluntarily unemployed or underemployed is a question of fact to be determined by the trial court based upon the facts and circumstances of the case. Rock v. Cabral (1993),67 Ohio St.3d 108, 112, 616 N.E.2d 218. A trial court's determination that a parent is voluntarily unemployed or underemployed will not be disturbed on appeal absent an abuse of discretion. Id. Once a trial court determines that a parent is voluntarily unemployed or underemployed, the court must determine the amount of income to impute based on the factors set forth in R.C. 3119.01(C)(11). The court can determine the amount of imputed income to a voluntarily unemployed or underemployed parent based on the following criteria:
(i) The parent's prior employment experience;
 (ii) The parent's education;
 (iii) The parent's physical and mental disabilities, if any;
 (iv) The availability of employment in the geographic area inwhich the parent resides;
 (v) The prevailing wage and salary levels in the geographicarea in which the parent resides;
 (vi) The parent's special skills and training;
 (vii) Whether there is evidence that the parent has theability to earn the imputed income;
 (viii) The age and special needs of the child for whom childsupport is being calculated under this section;
 (ix) The parent's increased earning capacity because ofexperience;
 (x) Any other relevant factor.
R.C. 3119.01(C)(11)(a).
 {¶ 11} The issue of Thomas' failure to comply with the order for child support has persisted throughout the entire divorce and post-divorce proceedings. Thomas has failed on numerous occasions to pay child support in a consistent manner. Only when motions for contempt are brought against Thomas and he is faced with the sanction of jail time does Thomas bring his child support payments current. On February 24, 2003, Iris filed her motion for an increase in child support based upon Thomas' change of circumstances. Iris believed that Thomas' income was greater than what he had reported. The trial court had previously ordered Thomas to seek work, finding that he was voluntarily unemployed at the time the court granted Iris' motion for contempt for failure to pay child support on August 14, 2001. Shortly after Iris filed her motion for an increase in child support on February 24, 2003, Thomas filed a motion for a decrease in child support due to a change in circumstances on April 24, 2003.
 {¶ 12} Based upon the testimony at the hearing on the motions, the trial court determined that Thomas was voluntarily underemployed. The trial court made a number of findings, including the finding that Thomas had been less than forthcoming with information about his earnings. The trial court also found that Thomas' testimony conflicted with his actual tax returns. Primarily, the court found that Thomas was skilled in home remodeling and building and was not using these skills to his potential earning capacity, as the record reflects that Thomas had been quite successful in the construction business in the past. Further, the court found that Thomas had made little effort to secure employment at his skill level. The trial court also found that Thomas' annual expenditures far exceeded his alleged income of approximately $21,788.00 for the year of 2003. These findings are supported by the record and will not be disturbed by this court on review.
 {¶ 13} After determining that Thomas was voluntarily underemployed, the trial court proceeded to determine that $50,000.00 per year should be imputed to Thomas. The trial court's determination was based upon the testimony of Thomas, his current wife, Theresa, Iris and Kenny Dice, an owner of a construction company in Marion County. From the testimony provided by these witnesses, the trial court was able to determine the extent of Thomas' skills, his prior employment experience and information regarding the availability of employment and wage and salary levels in Marion County. The trial court's determination that Thomas had the potential income of $50,000.00 per year is supported by competent, credible evidence in the record and will not be disturbed by this court on review.
 {¶ 14} Thomas argues that the testimony of Kenny Dice was inadmissible because he was not qualified to render opinions regarding the criteria of R.C. 3119.01(C)(11) and because Iris failed to disclose the witness pursuant to Loc.R. 16. Loc.R. 16 provides the pre-trial procedure for cases originating from terminations of marriage. While Loc.R. 16 provides guidelines as to what should be provided by the parties and filed with the clerk of courts prior to the pre-trial hearing, the rule does not require that exhibits or evidence not be admitted if the rule is not followed. Basically, Thomas relies on the trial court's November 20, 2003 order to prepare and appear for final hearing which provides that the parties shall prepare trial briefs one week prior to trial. Further, the court stated that "[f]ailure to provide the above information in the prescribed manner by the prescribed date will render any exhibit or evidence inadmissible."
 {¶ 15} It is true that the trial court allowed testimony and evidence to be admitted at the hearing that was not in compliance with the court's order of November 20, 2003. A trial court has broad discretion in determining the admissibility of evidence.State v. Long (1978), 53 Ohio St.2d 91, 98, 372 N.E.2d 804. A trial court's decision regarding the admissibility of evidence will not be overruled unless it can be shown that the trial court abused its discretion and the party was materially prejudiced thereby. Id., citing State v. Hymore (1967), 9 Ohio St.2d 122,128, 224 N.E.2d 126.
 {¶ 16} The trial court gave leniency to both Thomas and Iris regarding the admission of testimony and evidence that was not provided in the parties' trial briefs. It is within the court's discretion to permit the evidence even though it violated with the court's prior order as long as the court does not abuse its discretion. Since both parties violated the prior order and the court allowed the admission of testimony and evidence from both sides, we find that the trial court did not abuse its discretion. The testimony of Kenny Dice was relevant to the court's inquiry regarding Thomas' potential income. Kenny Dice testified regarding his experiences in the construction business in Marion County of which he was qualified to testify. Thomas' counsel had the opportunity to cross-examine Kenny Dice and had the opportunity to provide evidence supporting the assertion that Thomas was not underemployed. The admission of the testimony of Kenny Dice did not materially prejudice Thomas and the court did not err in considering such evidence.
 {¶ 17} Therefore, we hold that the trial court did not err in determining that Thomas was underemployed and imputing income to him in the amount of $50,000.00 per year. Accordingly, Thomas' first, second, third and fourth assignments of error are overruled.
Insurance
 {¶ 18} In his fifth assignment of error, Thomas argues that the trial court erred in ordering him to reimburse Iris $4,985.76 for health insurance for the children during the year of 2003.
 {¶ 19} In the January 8, 2002 judgment entry, the trial court found that "[t]he parties agreed that Defendant [Thomas] shall carry health insurance for the children and that he will provide Plaintiff [Iris] with any cards or documents necessary to utilize the insurance for the children" and made an order providing so. The parties do not dispute that Thomas was responsible for providing health insurance for the children. The parties dispute whether Thomas obtained the health insurance and provided the necessary cards and documents to Iris.
 {¶ 20} Thomas testified that he purchased health insurance for the children from Fortis Insurance and testified that he notified Iris about the insurance. Thomas provided a document regarding his purchase of insurance for the children at the hearing, although Thomas did not initially bring the document to the hearing as required by the court's November 20, 2003 order. It is interesting to note that Thomas violated the same order he argues Iris violated and he received from the court the benefit of admitting his evidence, although he argues several times that Iris should not receive the same benefit. Thomas testified that the children were double covered with health insurance since Iris already had the children placed on her husband's health insurance plan. It is because of this double coverage that Thomas contends he terminated the coverage by Fortis. Thomas testified that Iris was not happy with the type of coverage Thomas had obtained and preferred to continue using the health insurance provided through her husband's plan.
 {¶ 21} Thomas did not show that he provided any health insurance coverage for the children during the year 2003. After Iris filed her motion for contempt for Thomas' failure to provide health insurance, Thomas proceeded to have the children added to his wife's health insurance plan, which provided no additional cost to Thomas or his wife. Thomas and his wife, Theresa, testified that the reason they did not add the children to the plan earlier was because Theresa did not want Iris to have access to her social security number through the health insurance documents.
 {¶ 22} Iris testified that she and Thomas agreed that Thomas would provide the health insurance for the children because it was expensive for Iris' husband to provide coverage through his health insurance plan. Iris testified that she never received any insurance cards or proof of insurance from Thomas during the year 2003. Iris testified she did receive an insurance card two days prior to the hearing showing health insurance coverage for the children effective January, 2004.
 {¶ 23} Thomas argues that the court's order that he pay $4,985.76 was made without any evidence as to whether the cost of the insurance provided by Iris' husband was reasonable or necessary. Iris provided documents showing that the cost of insurance for the children was $415.48 per month. Thomas failed to offer any evidence as proof of payment for insurance he provided for the children. Further, the documents regarding the insurance Thomas allegedly obtained did not provide the total cost per month or the type of coverage for the children. Therefore, Thomas failed to present any evidence that refuted Iris' evidence.
 {¶ 24} Thomas entered into an agreement with Iris to provide health insurance for the children. Thomas then failed to provide the insurance, even though coverage was available through his wife's health insurance plan at no additional cost to Thomas or Theresa. As a result of Thomas's failure to provide health insurance for the children, Iris had to continue health insurance coverage for the children under her husband's insurance plan. It was the failure on the part of Thomas to obtain health insurance for the children that resulted in Iris incurring $4,985.76 in health insurance costs for the children. The trial court did not abuse its discretion in ordering Thomas to reimburse Iris for these costs, as he failed to comply with court's prior order to provide health insurance for the children. Accordingly, the fifth assignment of error is overruled.
Attorney Fees
 {¶ 25} Thomas argues that the trial court erred in awarding attorney fees to Iris without any competent, credible testimony produced at the hearing regarding whether the attorney fees were reasonable and necessary. Iris contends that the trial court made the award of attorney fees pursuant to Loc.R. 26, which allows a court to award attorney fees in an amount less than $500.00 without holding an evidentiary hearing.
 {¶ 26} The resolution of a request for attorney fees is vested in the sound discretion of the trial court and will not be overturned upon review absent a showing of an abuse of discretion. Calobrisi v. Calobrisi, 3d Dist. No. 1-02-56, 2002-Ohio-6147, at ¶ 19. While the trial court has discretion in determining the amount of attorney fees, the court must base its decision on evidence showing the reasonableness of the time spent on the matter and the hourly rate. Id.; Wyatt v. Trimble Twp.Waste Water Treatment Dist. (Nov. 3, 1992), 3d Dist. No. 1251, unreported, 1992 WL 329386. In fact, Loc.R. 26 provides:
26.01 Any request for attorney fees must be made by writtenMotion and affidavit. * * * In cases where the request forattorney fees is less than $500, the Court will make a ruling asto the reasonableness and necessity of the fees based upon theaffidavits. If the request for attorney fees is more than $500and an objection is filed, the Court shall set a hearing todetermine the reasonableness and necessity of attorney fees.
 26.02 The affidavit in support of attorney fees shall includethe following:
 (a) An itemized statement describing the services rendered,the time for such services, the requested hourly rate, andnecessary expenses and costs for litigation;
 (b) A statement as to whether the case was complicated by anyfactor which necessitated extra time being spent on a case;
 (c) A statement regarding the attorney's years in practice andexperience in Family Court cases; and
 (d) A statement regarding the defending party's ability topay, and of the moving party's need for an award of attorney'sfees.
 {¶ 27} The rule clearly requires the party making a motion for attorney fees to include an affidavit with statements of information that would allow the trial court to make a determination regarding the reasonableness and necessity of the requested attorney fees. Iris failed to include such affidavit with her motion for attorney fees. The trial court determined a hearing on the issue of attorney fees was not required, pursuant to Loc.R. 26, and, therefore, the record is devoid of any evidence with which the trial court could have made the determination as to whether the requested attorney fees were reasonable and necessary. Therefore, we hold that the trial court abused its discretion in awarding attorney fees without the required affidavit setting forth information about the reasonableness of the requested fees. Accordingly, the sixth assignment of error is sustained.
Motion for Contempt
 {¶ 28} In his seventh, and final, assignment of error, Thomas argues that the trial court erred in denying Thomas' motion for contempt against Iris for failing to provide the pitching machine to Thomas. An appellate court may not reverse a trial court's determination on a motion for contempt absent an abuse of discretion. State ex rel. Ventrone v. Birkel (1981),65 Ohio St.2d 10, 11, 417 N.E.2d 1249.
 {¶ 29} Thomas' motion for contempt is based upon an order in the original divorce decree of April 16, 1996. The court ordered that "[t]he parties shall share the pitching machine for three (3) years then it shall be the sole property of the Defendant's." Thomas contends that Iris was in contempt for failing to give Thomas the pitching machine after the three years. Thomas testified that he repeatedly asked Iris to return the pitching machine to him although he did not make a motion for contempt until approximately four years after he was entitled to possession of the machine. The pitching machine was sold by Iris' oldest son to the university he attended prior to Thomas' motion for contempt.
 {¶ 30} The trial court mainly relied on the testimony regarding the condition of the pitching machine at the time it was given to Iris in determining that the pitching machine had no current value. Iris testified that Thomas provided the pitching machine to her only after she filed a motion for contempt to have it returned to her. Iris testified that the pitching machine was given to her in very poor condition. Since parts of the pitching machine were missing when it was delivered to her, Iris had to purchase parts in order to make the machine operable. The testimony of the parties also established that the pitching machine was twelve to fourteen years old. Thomas only testified as to the value of a new pitching machine and failed to present any evidence as to the value of the pitching machine that had been owned by the parties. Based upon the testimony at the hearing, we hold that the trial court did not abuse its discretion in determining that the pitching machine did not have any current value and denying Thomas' motion to find Iris in contempt for failing to give the pitching machine to him. Accordingly, the seventh assignment of error is overruled.
 {¶ 31} The judgment of the Common Pleas Court of Marion County is affirmed, in part, and reversed, in part, and the cause is remanded for proceedings consistent with this opinion.
Judgment affirmed in part, and Reversed in part, and CauseRemanded.
 Shaw, P.J. and Cupp, J., concur.