OPINION *Page 2 
{¶ 1} Father-Appellant, Stanley E. Ayers, Jr., appeals the judgment of the Van Wert County Court of Common Pleas, Domestic Relations Division, ordering him to pay Mother-Appellee, Kimberly Haas (formerly Kimberly Ayers), monthly child support. On appeal, Stanley asserts that the trial court erred when it did not deviate from the child support guidelines based upon time allocated under a shared parenting agreement and when it failed to acknowledge a prior lump sum payment in exchange for a waiver of child support. Finding that the trial court did not abuse its discretion in calculating child support, we affirm the judgment of the trial court.
 {¶ 2} Stanley and Kimberly married in 1983 and had two children, Zachery (DOB 11/25/1985) and Nicole (DOB 03/10/1990). Their marriage was terminated in July 2003 by a dissolution decree which incorporated their separation agreement, including a shared parenting plan.
 {¶ 3} The 2003 separation agreement contains the following provisions in Article II, addressing "Shared Parenting and Allocation of Parental Rights."
 2.1 The parties shall share joint custody with each party being the residential and custodial parent of the children.
 2.2 The parties acknowledge that they have calculated child support in accordance with the guidelines set forth in R.C. Chapter 3119 and that a deviation from the child support guidelines is warranted and justified as [Stanley] will pay a *Page 3 lump sum to [Kimberly] and each shall share in the costs of care of the parties' minor children.
 2.03 The parties agree that any payment of money by [Stanley] to [Kimberly] herein, that is not paid through the Ohio Child Support Payment Central shall be considered as a payment for support; the payments made will be to discharge an obligation other than support. (Ohio Rev. Code 2301.36)
 {¶ 4} The three remaining sections of the shared parenting part of the agreement discuss the joint payment of uninsured medical expenses, Kimberly's obligation to maintain health insurance for the children, and the court's retention of continuing jurisdiction over the children with respect to custody, support and visitation.
 {¶ 5} In Article III, titled the "Division of Property," there are provisions dividing the personal property, their respective automobiles, and their bank accounts. Kimberly was to quit claim her interests in the marital residence and the business property, transfer her interests in the mutual funds to Stanley, and waive any claim to interests in the assets or property of Ayers-Sterrett, Inc. Section 3.08 of this property division article states:
 [Stanley] shall pay to [Kimberly] a lump sum in the total amount of $30,000.00. [Stanley] shall make said lump sum payment to [Kimberly] on the final hearing date in this matter. [Kimberly] shall provide to [Stanley] written proof of full payment of the debts listed in Article IV, Paragraph 4.02, within thirty (30) days of receipt of these funds. *Page 4 
 {¶ 6} Article IV of the separation agreement, referenced in Section 3.08 above, addresses the division of expenses and debts between the parties, and Section 4.02 lists the thirteen charge accounts that Kimberly was to pay within thirty days of receiving the $30,000 lump sum payment from Stanley. The separation agreement does not indicate a monetary value for any of the assets or debts.
 {¶ 7} Also filed with the dissolution judgment entry and separation agreement was a "support order," finding that Stanley was the obligor and was under an order to pay child support, but that "a deviation of the child support obligation is appropriate as [Stanley] shall pay a lump sum to [Kimberly] and each shall share equally in the cost of care of the parties' minor children." Child support computation worksheets were attached to the support order showing that Stanley's and Kimberly's adjusted gross incomes were $35,370 and $19,650, respectively. The worksheets further showed that Stanley's annual child support obligation would be $6,956.82 if Kimberly was the residential parent, but would be reduced to $1,561.47 if they considered deviations due to an equal residential time allocation. The child support order did not specify any payment by Stanley.
 {¶ 8} In July 2004, the month after the emancipation of Zachery, Kimberly filed a motion to show cause claiming Stanley should be found in contempt for failing to pay his share of medical expenses, and requesting a modification of the *Page 5 
former child support order because there had been a material change in Stanley's income and/or assets. A voluntary dismissal of this motion was filed on September 22, 2004.
 {¶ 9} Shortly thereafter, Stanley and Kimberly signed an agreement stating that Stanley would pay Kimberly $784 for attorney fees and $563.90 for car payments and insurance, and Kimberly would agree not to initiate any action for child support for Nicole or to contest the terms of the dissolution agreement as long as Stanley complied with the terms.
 {¶ 10} In April 2006, the Van Wert Child Support Enforcement Agency ("CSEA") conducted an administrative review[1] and recommended that Stanley pay child support of $131 per month, plus a processing charge. The CSEA attached a child support worksheet showing gross adjusted incomes of $66,144 for Stanley and $38,359.80 for Kimberly, and included a $5,927.40 annual deviation for an equal allocation of time between the two parents.
 {¶ 11} Stanley requested a hearing on the CSEA's recommendation in accordance with R.C. 3119.63, and an abbreviated hearing was held in January 2007. At this hearing no testimony was heard, but Stanley and Kimberly agreed that they would each submit exhibits, stipulating as to the admissibility of those *Page 6 
exhibits, and that they would submit briefs outlining their arguments and positions on the issues.
 {¶ 12} Stanley proffered seven exhibits, including the parties' dissolution documents, receipts and reimbursement calculations for Nicole's expenses, copies of the child support recommendation documents from the CSEA, and the agreement stating that Stanley would pay Kimberly $1,347.90 in exchange for her agreement not to contest the terms of the dissolution. In his post-hearing brief, Stanley argued that the CSEA's decision that he should now pay $131 per month had failed to take into consideration that Kimberly had waived her right to receive child support by accepting lump sum payments at the time of the dissolution and in October 2004, and that it was appropriate to deviate from the child support guidelines based upon the shared parenting plan.
 {¶ 13} Kimberly offered ten exhibits for admission, including copies of income tax returns for Stanley and the Ayers Mechanical Group LLC, Stanley's financial statement, unpaid medical bills for Nicole, a chart showing the allocation of time Nicole spent with each parent, and attorney's fees. Kimberly's post-hearing brief stated that Stanley's income for support purposes should be $142,767 because Stanley, who is CEO and the sole member of the corporation, receives additional benefits and loans from his company. She further believed that his depreciation tax deductions and alleged losses from his horse training "hobby" *Page 7 
should rightfully be included as income for child support purposes. Kimberly also claimed that Nicole only spends fourteen percent of her time with Stanley.
 {¶ 14} In April 2007, the magistrate issued a decision, along with an attached child support worksheet, finding that Stanley should pay monthly child support to Kimberly in the amount of $754, plus two percent processing charges. The magistrate found that both parties' incomes had increased since the issuance of the prior child support order. The child support worksheet calculations showed Stanley's adjusted gross income was $84,299[2] and Kimberly's adjusted gross income was $38,742, resulting in an annual support obligation of $9,051 for Stanley. The magistrate stated that no deviation was applied because the prior parenting order did not designate parenting times other than to refer to "joint custody" of the children, and there was nothing in the agreement to support Stanley's contention that the order provided for equal alternating weeks of residency.
 {¶ 15} Thereafter, Stanley filed objections to the magistrate's decision, which were overruled.
 {¶ 16} In September, 2007, the trial court issued its final judgment entry consistent with the decision of the magistrate, ordering Stanley to pay Kimberly *Page 8 
child support in the amount of $769.08 per month, including processing charges, effective May 3, 2006.
 {¶ 17} It is from this judgment that Stanley appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE TRIAL COURT ERRED WHEN IT FAILED TO DEVIATE FROM THE CHILD SUPPORT GUIDELINES BASED UPON THE PARENTING TIME ALLOCATED TO EACH PARTY OR TO SET FORTH ITS SPECIFIC FINDINGS.
 Assignment of Error No. II THE TRIAL COURT ERRED WHEN IT FAILED TO ACKNOWLEDGE THE LUMP SUM PAYMENT OF CHILD SUPPORT AND APPELLEE'S PRIOR CONTRACTUAL WAIVERS OF CHILD SUPPORT IN ADDITION TO THE LUMP SUM.
 Standard of Review {¶ 18} It is well established that an appellate court reviews child support matters under an abuse of discretion standard. Long v.Long, 162 Ohio App.3d 422, 2005-Ohio-4052, ¶ 8, citing Booth v.Booth (1989), 44 Ohio St.3d 142, 144. Likewise, a trial court's adoption of a magistrate's decision is reviewed under an abuse of discretion standard. Marchel v. Marchel, 160 Ohio App.3d 240, 243, 2005-Ohio-1499. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or *Page 9 
unconscionable." Blakemore v. Blakemore (1985), 5 Ohio St.3d 217, 219. In applying the abuse of discretion standard, we must not substitute our judgment for that of the trial court. In re Jane Doe I (1991),57 Ohio St.3d 135, 138.
 Assignment of Error No. I {¶ 19} In his first assignment of error, Stanley argues that the trial court abused its discretion because it did not deviate from the child support guidelines based on parenting time, despite the lack of evidence that there had been a change in the shared parenting arrangement. Stanley also complains that the trial court did not make specific findings of a change in the amount of support pursuant to R.C. 3119.79, although he does acknowledge that the applicable worksheets imply this change.
 {¶ 20} The amount of child support calculated using the child support schedule is "rebuttably presumed" to be the correct amount of child support due. Marker v. Grimm (1992), 65 Ohio St.3d 139. The party seeking to rebut the basic child support schedule calculation has the burden of presenting evidence which would demonstrate that the calculated award is unjust, inappropriate, and would not be in the best interests of the child. Spencer v. Spencer, 5th Dist. No. 2005-CA-00263,2006-Ohio-1913, ¶ 44.
 {¶ 21} Where there is a shared parenting order, R.C. 3119.24 states that the court "may" deviate from the amount that is calculated according to the child *Page 10 
support schedule, but that the court must consider "extraordinary circumstances" and other factors or criteria if it deviates and it must enter in the journal that the amount would be unjust or inappropriate and would not in the best interest of the child, and it must enter findings of fact to support its determination. R.C. 3119.24. It is not mandatory that the trial court deviate from the worksheet. Womack v.Womack, 3d Dist. No. 5-2000-24, 2001-Ohio-2146. A party to a shared parenting plan is not automatically entitled to a set-off or credit for time spent with the children under the plan. Pauly v. Pauly, (1997)80 Ohio St.3d 386, 388-90. A court is not required to deviate and a parent is not automatically entitled to a downward deviation, even if a factor allowing for deviation may be present. Hills v. Patten, 3d Dist. 1-07-71, 2008-Ohio-1343, ¶ 33.
 {¶ 22} In Fox v. Fox, this Court examined the same issue presented here, when the father complained that the trial court erred when it failed to continue the deviation that was included in the original support obligation based upon shared parenting time. 3rd Dist. No. 5-03-42, 2004-Ohio-3344. In Fox, there was evidence before the trial court that the parties intended to continue having the father spend more than the usual amount of time with the child. We stated that there was "no authority whatsoever that required a trial court to deviate from the child support guidelines merely because such a deviation would be permissible or even desirable." Id. at ¶ 17 (citations omitted). *Page 11 
 {¶ 23} Likewise, in this case, it was not an abuse of discretion for the trial court to compute Stanley's child support obligation based solely upon the child support guidelines. The trial court was not required to include a deviation based upon additional time spent with the child or upon the parties' shared parenting plan. In fact, Stanley did not provide the court with any exhibits or evidence that showed he actually spent any additional time with Nicole, while Kimberly submitted an exhibit showing that Nicole spent eighty-six percent of her time with Kimberly over a twelve month period. Furthermore, the trial court stated that it was not applying any deviation because the original parenting order only referred to "joint custody" of the children, but it did not specifically designate any parenting times. The trial court was not legally obligated to deviate from the basic child support worksheet calculations, and there was no evidence before the court that would have warranted any deviation based upon allocation of parental time.
 {¶ 24} Stanley also contends that the trial court erred because it did not set forth specific findings of a change of more than ten percent or indicate any findings relative to R.C. 3119.23 as to why it did not deviate from the child support guidelines.
 {¶ 25} A court may only modify an existing child support order if there is a change of circumstances that is substantial enough to require a modification in the *Page 12 
child support amount. R.C. 3119.79. If, upon recalculation, the new child support amount deviates from the existing order by at least ten percent, that deviation will be considered a change in circumstances warranting a modification of the child support amount. Bentley v.Bentley, 3rd Dist. No. 9-04-09, 2004-Ohio-5100, ¶ 8. Obviously, when the amount of child support is zero, but the support guidelines establish that the parent owes support, then the ten percent difference is clearly met. DePalmo v. DePalmo (1997), 78 Ohio St.3d 535, 540.
 {¶ 26} Whether a court is modifying a preexisting order or whether the court is modifying an order based on an agreement between the parties that does not include any order for the payment of child support, the court must apply the child support guidelines as set out in Marker v.Grimm. DePalmo v. DePalmo, supra, at paragraphs one and two of the syllabus. Marker v. Grimm requires that a child support worksheet must be completed and made a part of the record and that any deviation from the basic child support schedule must be entered by the court in its journal and must be supported by findings of fact. Marker v. Grimm, supra. R.C. 3119.23 sets forth factors relevant to granting deviations that a court "may" consider.
 {¶ 27} Here, the trial court noted that both parties' incomes had increased since the original child support determination and completed a new child support worksheet that increased Stanley's child support obligation by well over ten *Page 13 
percent. The court made the calculations pursuant to the guidelines and applicable worksheet and went on to state that there was no reason to deviate from that amount. The law does not require any specific findings by the court "not to deviate," only that the court must make specific findings on the record if it does deviate from the guidelines. The court's calculations of the new child support amount and its supporting documents were in accordance with the law and we do not find an abuse of discretion.
 {¶ 28} Accordingly, we overrule Stanley's first assignment of error.
 Assignment of Error No. II {¶ 29} In his second assignment of error, Stanley claims that the trial court should have considered his "lump sum payment" of $30,000 to Kimberly at the time of the dissolution as payment of child support in advance. By not doing so, Stanley contends that the trial court is requiring him to pay child support twice. He further argues that the trial court should have honored the parties' second agreement to waive child support, when Stanley paid Kimberly approximately $1,347 if she would agree to forgo any future requests for child support.
 {¶ 30} In DePalmo, the parents originally made an agreement between themselves concerning child support, rather than follow the established guidelines. The Supreme Court of Ohio made the following statement concerning such agreements: *Page 14 
 The law favors settlements. However, the difficult issue of child support may result in agreements that are suspect. In custody battles, choices are made, and compromises as to child support may be reached for the sake of peace or as a result of unequal bargaining power or other economic pressures. The compromises may be in the best interests of the parents but not of the child. Thus, the legislature has assigned the court to act as the child's watchdog in the matter of support.
DePalmo, 78 Ohio St.3d at 540.
 {¶ 31} The trial court is obligated to test any proposal of the parents to see if it meets the child support guidelines under theMarker standard, even when the parties agree to an amount different than the guidelines, or agree that only one party shall assume all support. Id. Even in a case where there has been a substantial one-time child support payment made at the time of the dissolution, the trial court must follow the statutory procedures and must consider whether or not deviations from the child support guidelines are in the best interests of the child when ruling on a motion to modify child support. SeeYark v. Yark (2001), 6th Dist. No. F-00-010, 2001 WL 27550 (father had paid $200,000 to mother in lieu of making monthly child support payments).
 {¶ 32} In the case sub judice, the trial court did not make any allowances or deviations for the lump sum payments that Stanley had made to Kimberly. As discussed above, when reviewing the first assignment of error, a trial court is not required to deviate from the child support guidelines, nor is it required to provide a reason for not deviating. *Page 15 
 {¶ 33} Stanley claims that DePalmo is not applicable to him because his lump sum payment was not a payment in lieu of child support, but was an advance payment of child support, and if he is required to pay support now, he would be paying twice. The facts and the law do not support Stanley's proposition.
 {¶ 34} Stanley gave Kimberly a $30,000 lump sum payment at the time of the dissolution. The original shared parenting agreement stated that a deviation from the child support guidelines was justified because of the lump sum payment, but the agreement did not specify how much of the lump sum payment was for child support. In fact, the $30,000 payment was set forth in the section of the separation agreement concerning the "Division of Property," directly after the sections stating that Kimberly would relinquish many of her interests in the parties' assets. The agreement specifically required her to use monies from the lump sum payment to pay thirteen separate charge accounts. While the separation agreement did not itemize the values of any of the property or debts, in his post-hearing brief Stanley claimed that $13,000 of the $30,000 was to be used by Kimberly to pay marital debts, leaving her with a lump sum of $17,000.
 {¶ 35} Stanley was not ordered to make any child support payments for nearly the first three years after their dissolution. Now, based on the trial court's decision, he is obligated to pay $769 per month from May 2006 until June 2008, *Page 16 
when Nicole presumably will be emancipated, for a total of approximately $20,000.
 {¶ 36} In ordering these child support payments, the trial court apparently rejected Stanley's assertions that $17,000, or whatever sum was not allocated to the property settlement, was sufficient to satisfy all of his child support obligations for the full five year period until both of the children were emancipated. We do not find the trial court's decision to be unreasonable, arbitrary, or unconscionable. In fact, it is this very type of agreement that is addressed in DePalmo. In his appellate brief, Stanley proclaims how in their "bargain," Kimberly was "negotiating away the potential right to increased future support, just as [Stanley] was negotiating away his potential decreased support obligation." There was never any discussion as to what was in the best interests of the children. Therefore, it is up to the court, as discussed in DePalmo, to act a watchdog and to follow the statutory guidelines unless there are stated factual findings as to why the guideline amount would be unjust or inappropriate and would not be in the best interest of the child.
 {¶ 37} Another reason why the trial court was not obligated to consider Stanley's lump sum payment as child support was because he did not make the *Page 17 
payment through the appropriate child support enforcement agency. R.C. 3121.45, effective March 22, 2001,[3] states that:
 [a]ny payment of money by the person responsible for the support payments under a support order to the person entitled to receive the support payments that is not made to the office of child support, or to the child support enforcement agency administering the support order * * * shall not be considered a payment of support under the support order and, unless the payment is made to discharge an obligation other than support, shall be deemed to be a gift.
(Emphasis added).
 {¶ 38} In Granzow v. Bureau of Support of Montgomery County (1990),54 Ohio St.3d 35, the Ohio Supreme Court examined the constitutionality of this statute's substantially similar predecessor, R.C. 2301.36, and found that this "pay through" requirement is constitutional and furthers legitimate government interests. "This requirement ensures that orderly records will be kept of each support payment, thereby apprising government officials of the status of each case. [Citations omitted.] Furthermore, the pay-through requirement should effectively eliminate most litigation by the parties concerning the payment status of their support orders." Id. at 37. *Page 18 
 {¶ 39} The fact that parties may agree to make direct payments does not entitle the obligor to a credit under the statute. Thottam v.Thottam (1996), 5th Dist. No. 1995CA00332, 1996 WL 363079. The plain language of the statute is clear; any payments that are not made through the support agency "shall not be considered a payment of support."Cushwa v. Cushwa (1994), 2nd Dist. No. 94-CA-23, 1994 WL 619780. The obligor may rebut the presumption that such payments were gifts by proving that they were made to discharge some non-support obligation, but they are still not credited against the obligor's support obligation. Id.
 {¶ 40} In the case before us, Stanley and Kimberly paraphrased R.C. 2301.36 in their separation agreement, but changed the wording of the statute to indicate that any payment not made through the support bureau"shall be considered as a payment for support[.]" (Emphasis added.) Then, the second part of the sentence appears to contradict the first clause and states that "* * * the payments made will be to discharge an obligation other than support." Although it is unclear what the parties actually intended, it is certain that they cannot abrogate the law by agreeing to something that is contrary to the statute. See MassillonSavings and Loan Co. v. Imperial Finance Co. (1926), 114 Ohio St. 523, at paragraph three of the syllabus (holding that "[a] party who enters into a contract despite a statute prohibiting it, cannot thereafter claim the fruits of its performance *Page 19 
in a court of justice."). See, also, Countrymark Cooperative, Inc. v.Smith (1997), 124 Ohio App.3d 159, 164, citing Diversified PropertyCorp. v. Winters Natl. Bank Trust Co. (1967), 13 Ohio App.2d 190.
 {¶ 41} Moreover, the trial court's support order, filed with the separation agreement, correctly stated the law, ordering that "[a]ny payment of money by the Obligor herein to the Obligee herein that is not paid through the Child Support Enforcement Agency shall not be considered as payment for child support or spousal support." (July 2003 Support Order DR-5, emphasis added.) The trial court further mandated that all child support payments must be made to the Ohio Support Payment Central. There is nothing in the record indicating that any payments were ever made through any state child support agency. The trial court was not under any legal obligation to consider Stanley's lump sum payment as fulfillment of a child support obligation.
 {¶ 42} We also do not find that the trial court abused its discretion when it declined to enforce Stanley's and Kimberly's October 2004 "contract," in which Kimberly waived her right to seek child support in exchange for money to pay a few bills. Again, this is the very type of "settlement" that DePalmo seeks to avoid, and this payment was also apparently made outside of any child support enforcement agency. The trial court did not abuse its discretion in its modification of child support. *Page 20 
 {¶ 43} The amount calculated using the child support worksheet is rebuttably presumed to be correct, and we do not find anything in the record demonstrating that Stanley provided evidence demonstrating that the calculated award was unjust or inappropriate and not in the child's best interest.
 {¶ 44} Accordingly, we overrule Stanley's second assignment of error.
 {¶ 45} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 SHAW, P.J., and WILLAMOWSKI, J., concur.
[1] Stanley states that Kimberly requested this review in February 2006.
[2] The magistrate also noted that "[Stanley] runs a successful business, has a net worth of $712,081.00 and has received personal loans from the business exceeding $217,000.00." The trial court further commented that Stanley's gross income from all sources was probably even "significantly higher," but there wasn't sufficient evidence before the court to support that finding. (Magistrate's decision, ¶ 4).
[3] This statute replaces the former R.C. 2301.36, but is substantially similar to the previous statute. We note that both the Ayers' separation agreement and the trial court's support order reference R.C. 2301.36 even though both documents were filed in 2003, two years after the effective date of R.C. 3121.45 and R.C. 3121.44. *Page 1