[Cite as *Green v. Tarkington*, 2010-Ohio-2165.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY

DANIELLE N. GREEN,                                    CASE NO. 10-10-02

   PLAINTIFF-APPELLANT,

  v.

RAYMOND A. TARKINGTON,                          O P I N I O N

   DEFENDANT-APPELLEE.

Appeal from Mercer County Common Pleas Court
Juvenile Division
Trial Court No. 4-2003-034

Judgment Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Decision: May 17, 2010

APPEARANCES:

   *Thomas Luth,* for Appellant

   *Martin D. Burchfield,* for Appellee

**WILLAMOWSKI, P.J.**

{¶1} Although this appeal has been placed on the accelerated calendar, this court elects to issue a full opinion pursuant to Loc.R. 12(5).

{¶2} Plaintiff-Appellant, Danielle N. Green ("Danielle"), appeals the judgment of the Mercer County Court of Common Pleas, Juvenile Division, modifying the amount of monthly child support paid by Defendant-Appellee, Raymond A. Tarkington ("Raymond"). Danielle claims that the trial court abused its discretion when it ordered a negative deviation from the statutory guidelines without a finding that the deviation was in the best interests of the child and without a change of circumstances. For the reasons set forth below, the judgment is affirmed in part and reversed in part.

{¶3} Danielle and Raymond are the parents of Hayden G. Green, who was born February 18, 2003. The parents have never been married to one another.

{¶4} In June 2003, the trial court ratified the parties' stipulations concerning parental rights and responsibilities. Danielle was named the residential parent and Raymond was granted companionship time consisting of three weekends every month, three weeks during the summer, and time during Christmas week and other holidays. Raymond was ordered to pay $274.08 per month child support, plus 2% poundage, and he was ordered to carry health insurance for the child through his employer. The amount of child support was

calculated using the standard child support worksheet and guidelines with no deviations.

{¶5} On February 19, 2009, Danielle filed a request for an administrative review of child support with the Mercer County Child Support Enforcement Agency ("CSEA"). CSEA issued an Administrative Adjustment Recommendation on April 6, 2009, recommending that Raymond pay monthly support of $234.76 per month, plus 2% processing charge, based upon the child support computation worksheet.[1] Neither party requested a hearing or further review, so on May 7, 2009, the trial court entered judgment adopting CSEA's support recommendations.

{¶6} However, on April 3, 2009, just prior to CSEA issuing its recommendation, Raymond filed a Motion for Modification of Residential Placement requesting that the trial court modify the residential placement of the child to him. Danielle filed her response in opposition on April 16, 2009, and the matter was scheduled for hearing in July.

{¶7} On July 8, 2009, the parties appeared in court stating that they had reached an agreement on all matters except child support. They stipulated that Danielle and Raymond were to enter into a shared parenting plan, with Danielle having residential placement during the school year and Raymond having

---

[1] This reduction from the 2003 order was apparently due to the fact that both parties showed a lesser amount of salary/income as compared to the figures used on the child support worksheet accompanying the June 2003 support order, and each party also had another minor child that was taken into consideration.

residential placement during the summer. The stipulations specified the schedule for parenting time/visitations when each party was the non-residential parent,[2] and addressed schooling, discipline, and other pertinent matters.

{¶8} The judgment entry adopting their stipulations was filed on September 24, 2009, but noted that the parties "do not have an agreement as to child support." Shortly thereafter, the parties filed briefs and memorandum in support of their positions on child support modification and whether deviation from the prior CSEA worksheet was appropriate.

{¶9} On January 12, 2010, the trial court filed its judgment entry on the matter of child support. The new child support calculations included deviations based upon adjustments for increased residential time with Raymond. The trial court figured that Raymond would now have 114 days of parenting time. After doing calculations and allowing for the deviations, the trial court ordered that Raymond's new child support obligation was $98.04 per month, plus 2% processing fee.

{¶10} It is from this judgment that Danielle timely appeals, raising the following two assignments of error.

---

[2] Raymond would continue to have companionship three weekends per month when Danielle was the residential parent, and Danielle would have companionship every other weekend, and for the first and last weeks of the child's summer vacation, during the time when Raymond was the residential parent.

**First Assignment of Error**

**The trial court committed prejudicial error in ordering a negative deviation from the statutory amount of child support, without any evidence of the deviation being in the best interest of the child.**

**Second Assignment of Error**

**The trial court committed prejudicial error in ordering a modification of the child support order filed May 7, 2009, when no change of circumstance occurred thereafter which would warrant such modification.**

{¶11} We review child support matters under an abuse of discretion standard. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. Accordingly, we will only reverse a trial court's judgment regarding child support matters if it is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. In order to facilitate our review of the issues, we elect to address the assignments of error in reverse order.

{¶12} In her second assignment of error, Danielle argues that the trial court erred in modifying the child support order because there was not a substantial change in circumstances as required by R.C. 3119.79. She claims that the slight increase in the time the child spends with Raymond does not constitute a significant change.

{¶13} A court may only modify an existing child support order if there is a substantial change of circumstances. R.C. 3119.79; *Ayers v. Haas*, 3rd Dist. No.

15-07-13, 2008-Ohio-2405, ¶25. This prerequisite is met if the new child support amount deviates from the existing order by at least ten percent or if there is a substantial change in circumstances that was not contemplated at the time of the issuance of the original child support order. R.C. 3119.79(A) and (C); *Bentley v. Bentley*, 3rd Dist. No. 9-04-09, 2004-Ohio-5100, ¶8; *Karales v. Karales*, 10th Dist. No. 05AP-856, 2006-Ohio-2963, ¶15.

**{¶14}** We find that there was a substantial change of circumstances in this case because the parties' parental rights and responsibilities were changed from Danielle being the sole residential parent to a shared parenting agreement by stipulation of the parties, inviting the recalculation. In addition, Raymond's time with his son increased and the trial court's recalculation of child support resulted in a modification that was greater than ten percent. Danielle's second assignment of error is overruled.

**{¶15}** In the first assignment of error, Danielle asserts that the trial court erred because it deviated from the statutory amount calculated according to the basic child support worksheet without any finding or explanation as to how or why this deviation was in the best interest of the child. Danielle complains that the new orders only increased Raymond's time with the child by two days per year (allegedly from 112 to 114 days per year), yet it decreased his basic support obligation by more than 58% (from 234.76 to $97.91 per month, a reduction of $136.85 per month or approximately $1,642 annually.) Danielle maintains that a

shared parenting plan does not automatically entitle a party to a set-off or credit for time spent with the children, and that the trial court abused its discretion because such a large negative deviation was not warranted or in the best interest of the child.

{¶16} Raymond, however, contends that there was a significant increase in the amount of his parenting time because he previously only had companionship with his son for 94 days under their original agreement, not the 112 days claimed by Danielle. Furthermore, Raymond argues that the 114 days that Hayden now resides with him is a significant increase over the 76 days of visitation normally granted under "standard" visitation schedules. Although Raymond acknowledges that the trial court did not specifically state the basis for the relationship between the time with the child and the support modification, he contends that their parenting modification resulted in Hayden spending increased time with his father, which was in Hayden's best interests, and the support obligation should better reflect the time that the parties are spending with the child.

{¶17} When issuing an order of child support, the trial court must calculate the amount of support "in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to 3119.24 of the Revised Code." *O'Conner v. O'Conner*, 3d Dist. No. 12-09-04, 2009-Ohio-5436, ¶9. The guideline amount of child support is rebuttably presumed to be the correct amount of child support due. R.C. 3119.03; *Fox v. Fox,* 3d Dist. No. 5-03-

42, 2004-Ohio-3344, ¶12; see also *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 141, 601 N.E.2d 496 (referencing same re a prior revision of the statute.) Pursuant to R.C. 3119.22, a court may order a deviation from the rebuttably presumed amount after considering the factors in R.C. 3119.23.

{¶18} Similarly, R.C. 3119.24 governs an award of child support when there is a shared parenting order and it states that the court shall order an amount calculated under the schedule and worksheet except that if the amount would be unjust or inappropriate and not in the child's best interest because of extraordinary circumstances of the parents or any factors in R.C. 3119.23, it may deviate from that amount. *Borer v. Borer*, 3d Dist. No. 13-09-24, 2009-Ohio-6522, ¶22. "Extended parenting time" is one of the relevant factors under R.C. 3119.23, and "the amount of time a child spends with each parent" may be considered under "extraordinary circumstances of the parents" pursuant to R.C. 3119.24. See R.C. 3119.23(D) and R.C. 3119.24(B)(1).

{¶19} However, it is not mandatory that a trial court deviate from the schedule and worksheet; a parent is not automatically entitled to a downward deviation merely because a factor may be present. *Womack v. Womack*, 3d Dist. No. 5-2000-24, 2001-Ohio-2146; *Lopez v. Coleson*, 3d Dist. No. 12-05-24, 2006-Ohio-5389, ¶9. Furthermore, a shared parenting plan does not automatically entitle a party to a set-off or credit for time spent with the children under the plan. *Pauly v. Pauly*, 80 Ohio St.3d at 388-90, 1997-Ohio-105, 686 N.E.2d 1108.

{¶20} If a court does find that a deviation is appropriate under the statutory factors, it must include three items in the journal entry: (1) the amount of child support calculated pursuant to the schedule and worksheet through the line establishing the actual annual obligation; (2) its determination that the presumed amount would be unjust or inappropriate and would not be in the best interests of the child; and (3) findings of fact supporting that determination. R .C. 3119.22; R.C. 3119.24(A)(2); *DePalmo v. DePalmo*, 78 Ohio St.3d 535, 538, 1997-Ohio-184, 679 N.E.2d 266; *Marker v. Grimm*, 65 Ohio St.3d at 143-44. Court-ordered deviations from the schedule and worksheet are not permitted absent full and strict compliance with the statutory requirements. *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 110, 616 N.E.2d 218*; Marker*, 65 Ohio St.3d at 141-42; *Borer*, at ¶24. "These requirements are mandatory, and the trial court must follow them literally and technically in all material respects." *Hurte v. Hurte*, 164 Ohio App.3d 446, 454-56, 2005-Ohio- 5967, 842 N.E.2d 1058, ¶26; see, also *Laver v. Laver*, 3d Dist. No. 7-08-01, 2008-Ohio-6068, ¶¶12-13 (finding that the modification of child support under the shared parenting plan was contrary to law because the court made no finding as to the child's best interest).

{¶21} In its final judgment entry of January 12, 2010, the trial court merely stated:

> **The parties stipulated to the Child Support Enforcement Agency worksheet summary which was previously filed with the court and the parties agreed that the court was to determine if any**

> **deviation was appropriate. Counsel submitted briefs on possible deviation.**
>
> **The court in reviewing the consent agreement on parenting time of the parties hereby finds that father has 114 days of parenting time and mother has 238 days[3] of parenting time. Father's parenting time exceeds the standard parenting time, therefore, father receives credit for said additional days.**

The trial court then stated that Raymond's child support obligation would be $97.01 per month (plus processing fee), effective April 3, 2009. The judgment entry did not specify the amount calculated as the actual annual obligation; however, the child support worksheet was attached showing this amount was $2,818.65. This worksheet used the same figures for salary/income/healthcare expenses that were utilized by CSEA in its April recommendation that was adopted by the trial court in May 2009. Thereafter, the following line showed a "deviation adjustment" of "-$1,642.18." There was no explanation for this deviation, although there were several pages following the worksheet containing computer-generated computations for various "theories for deviation of child support." The "-$1,176.97" adjustment matched the amount computed under the third "theory." Although the judgment entry seems to indicate that the deviation was to give "credit" for Raymond's additional time with the child, it did not contain any determination that the presumed worksheet amount would be unjust or

---

[3] This appears to be a clerical error, as the total days do not add up to 365 days in a full year. Furthermore, the attached worksheet deviation calculations specify that the child has 114 residential days with the father, and 251 residential days with the mother.

inappropriate and would not be in the best interests of the child, nor were there any findings of fact supporting such a determination. Therefore, we find that the trial court abused its discretion by not including the statutorily-mandated findings.

{¶22} Although a trial court may exercise broad discretion when determining the appropriate award of child support, its decisions must be made in compliance with the statutory guidelines and requirements. We are unable to determine whether or not several of the determinations in this judgment entry were an abuse of discretion because the record does not reflect the trial court's reasoning and findings as to how the decisions relate to the best interest of the child.[4]

{¶23} The trial court selected a child support deviation computation "theory" which included calculations of each party's parental obligations, multiplied by the percentage of time each parent had with the child, and then set off the resulting obligations after consideration of other expenses. While that may well be a reasonable method, we first need to understand the trial court's reasoning as to whether the initial presumed amount would be unjust or inappropriate and whether it would not be in the best interest of the child, supported by findings of fact. We note that Raymond's time with the child increased by approximately

---

[4] Because this was originally an "accelerated" appeal, there is no transcript of the hearings below. While the trial court may have considered the requisite factors at these proceedings, we cannot review its reasoning if it is not included in the judgment entry or elsewhere in the record.

twenty days.[5]   Under the previous agreement, Raymond had 94 days parenting time, or 26% of the year, and Danielle had 271 days, or 74%.  Under the new shared parenting plan, Raymond has 114 days, or 31%, and Danielle has 251 days, or 69%.  Also, we are uncertain as to why the trial court made the new support obligation retroactive to April, when the new shared parenting agreement was not finalized until later in the year.[6]

**{¶24}** Furthermore, although the parties stipulated to using the worksheet summary which was previously filed with CSEA and the court, the record does not reflect the basis for many of the numbers used.  For example, the worksheet lists $7592 as "other income, non-taxable" for Danielle, even though the information she provided stated that she was unemployed and her only income was $6,980 from child support (R.C. 3119.01(C)(7) excludes child support from "gross income").  The record is devoid of any determination as to whether Danielle was voluntarily unemployed and whether or not any income, such as minimum wage, should be imputed to her.  And finally, we question how the parties arrived at the

---

[5] We disagree with the number of days of companionship proffered by *both* Danielle and Raymond in their attempts to minimize or maximize the degree of change in parenting time effectuated by the new shared parenting plan.  The trial court found that Raymond had the child for 114 days under the new plan. Danielle's representation that Raymond had the child for 112 days under the previous plan did not appear to account for some off-setting weekends.  Raymond's computation of 94 days with the child under the previous plan appears to be more accurate.  However, Raymond's contention that a parent only has 76 days of parenting time under the "standard" visitation plan is also misleading.  He does not count holiday time, because it is off-setting.  However, the parent does have the child during that holiday time, and it appears as if holiday time is figured into the other calculations.  The child support deviation worksheets in the record utilizes an assumption that "standard" visitation accords the non-custodial parent approximately 90 days of visitation/parenting time per year.

[6] Although Raymond did file a motion on April 3, 2010, for sole residential status, that is not the parenting plan that was eventually adopted by the September 24, 2009 Judgment Entry adopting their stipulations.

figure used for Raymond's cost for health insurance when the record shows that his health insurance provided coverage for four dependents and there was no incremental increase in cost for adding Hayden. See R.C. 3119.022, 20.a. (instructions for figuring marginal, out-of-pocket health insurance costs.)

{¶25} While the trial court's calculated deviation in Raymond's support obligation may or may not be a fair and appropriate amount, we cannot review that determination because the trial court did not provide the necessary information as to how it selected that particular deviation, why the presumed amount was unjust or inappropriate, and why the presumed amount was not in Hayden's best interest, together with findings of fact to support its determination. Therefore, we find that the trial court abused its discretion when it failed to make the mandatory statutory findings relevant to its modification of Raymond's child support obligations. Danielle's first assignment of error is sustained.

{¶26} Based on the above, the decision of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

*Judgment Affirmed in Part, Reversed in Part, and Cause Remanded*

**SHAW and PRESTON, J.J., concur.**

**/jnc**